IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DAVID LEE LEWIS, SR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:13CV355-MHT |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff David Lee Lewis, Sr., proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) seeking judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability insurance benefits under Title II of the Social Security Act and his application for supplemental security income under Title XVI. Upon review of the record and the parties' contentions, the court concludes that the decision of the Commissioner is due to be reversed.

**BACKGROUND**

Plaintiff is a high school graduate who has worked previously as a tree trimmer helper, material handler, and strapper/utility worker at a plywood company, jobs that are all classified at the "heavy" level of exertion. (R. 68-69, 206-14, 246). He last worked in January 2007, when he was 36 years old. (R. 166, 196, 206). On a previous application,

plaintiff was awarded benefits under Title II for a closed period of disability – from January 22, 2007 through July 1, 2009 – due to limitations arising from his impairments of "severe entrapment of left ulnar nerve and pain of the right hand possibly from carpal tunnel syndrome." (R. 86-96). The ALJ concluded that plaintiff could perform less than a full range of sedentary work during the closed period and, therefore, was disabled under the Social Security Act. However, the ALJ further determined that plaintiff's condition had improved sufficiently by July 2, 2009, to allow plaintiff to perform a full range of "light" work and, while plaintiff remained unable to perform any of his past relevant work, he could then perform other jobs existing in significant numbers in the national economy. Therefore, the ALJ found that plaintiff's disability ceased on that date. (Id.).

In November 2009, plaintiff filed the present applications for a period of disability and disability insurance benefits and for supplemental security income, alleging disability since October 1, 2009, due to "carpal tunnel syndrome." (R. 174-79, 241). He reported, "I am in pain. I am limited to what I can lift. The pain is in my fingers, wrist, elbows and shoulders in both sides. I have stiffness and numbness. My fingertips go cold." (R. 241). In a decision issued on January 18, 2012, the ALJ who heard plaintiff's present claims concluded that plaintiff has "severe" impairments of "carpal tunnel syndrome in the right hand; carpal tunnel syndrome on the left and status post carpal tunnel release; left shoulder acromiovicular arthritis with labral tear and impingement, status post arthroscopic surgery; and cervicalgia." (R. 24). He determined that plaintiff retains the residual functional capacity to perform less

than a full range of light work, as follows:

> The Claimant can sit and stand for three hours each and walk for two hours during the work day. The Claimant can sit, stand, and walk for one hour at a time. The Claimant can occasionally reach overhead and push and pull with both hands. The Claimant can frequently reach in all directions. The Claimant can frequently operate foot controls with both feet. The Claimant cannot climb ladders or scaffolds. The Claimant can occasionally balance, stoop, kneel, crouch, and crawl. The Claimant should not work around unprotected heights. The Claimant should have only occasional exposure to humidity, wetness, dust, odors, pulmonary irritants, extreme temperatures, and vibration. The Claimant can occasionally operate a motor vehicle. The Claimant can frequently work near moving mechanical parts. The claimant can tolerate working around loud noise, such as heavy traffic.

(Id.). The ALJ found that plaintiff remains unable to perform his past relevant work, but – based on the testimony of a vocational expert – there are other jobs that exist in significant numbers in the national economy that plaintiff can perform and, thus, he was not disabled from his alleged onset date through the date of the ALJ's decision. (R. 27-28). On March 28, 2013, the Appeals Council denied plaintiff's request that it review the ALJ's decision. (R. 1-3). Plaintiff commenced the present action thereafter. (Doc. # 1).

### STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable

person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

In a "Statement of the Issues" he filed on October 11, 2013, plaintiff states:

> I seek relief due to my health condition. I've been dealing with my pain and aching for years. 1) I suffer from carpal tunnel syndrome on both sides, which affecting me greatly. 2) I've had left shoulder repair which also have fiber optic wire due to a torn rotator cuff, bone spur and arthritis. 3) I have headaches and neck pain due to the bad discs in my neck. I continue to take my medications to manage my condition. 4) My condition have put me in a situation where it has taken away my ability to perform my everyday task or to perform continuous duties.

(Doc. # 12). The Commissioner understands plaintiff's "Statement of the Issues" to raise the general issues of "(1) whether the ALJ reasonably accommodated all of Plaintiff's limitations in his residual functional capacity finding; and (2) whether the ALJ reasonably assessed Plaintiff's credibility." (Commissioner's brief, Doc. # 15, pp. 1-2). Construing the statement of issues broadly, in view of plaintiff's *pro se* status, the court agrees that it raises the issues identified by the Commissioner.

### The ALJ's Credibility Finding

4

In the Eleventh Circuit, a claimant's assertion of disability through testimony of pain or other subjective symptoms is evaluated pursuant to a three-part standard. "The pain standard requires '(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005)(quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)).  If this standard is met, the ALJ must consider the testimony regarding the claimant's subjective symptoms.  Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).  "A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002)(citing Hale v. Bowen, 831 F.2d 1007 (11th Cir. 1987)).  "The credibility determination does not need to cite "'particular phrases or formulations'" but it cannot merely be a broad rejection which is "'not enough to enable [the court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'"" Dyer, *supra*, 395 F.3d at 1210 (citations omitted). "Substantial evidence must support the ALJ's reasons for discrediting pain testimony." Douglas v. Commissioner of Social Security, 486 F. App'x. 72, 75 (11th Cir. Aug. 7,

2012)(citing Hale, 831 F.2d at 1012).[1]

In his decision (R. 21-29), the ALJ does not find expressly that the pain standard is satisfied – *i.e.*, that plaintiff has an underlying medically determinable impairment that could reasonably be expected to produce the claimant's pain.  However, such a finding is implicit, since – after summarizing the evidence (R. 25-26) – the ALJ makes a credibility finding, giving his reasons for that finding.  (R. 26-27).  The ALJ states:

> The undersigned has also considered the Claimant's allegations and testimony; however, they are afforded only partial weight as they are only partially credible.  The Claimant's inconsistent statements about when the Claimant's shoulder impairment began undermine his credibility.  The Claimant told the consultative examiner that he began having shoulder pain in 2006.  However, he did not raise that issue in his past disability case, which related to 2006 to 2009, did not allege any problem when he submitted his initial application in this matter, and he told his physician that the pain only began in April 2010.

---

[1] Social Security Ruling 96-7p provides, in part, that:

[w]hen evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.  The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility.  The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.  It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.  This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

SSR 96-7p, 1996 WL 374186, *4 (Jul. 2, 1996).

6

> In light of this evidence, the Claimant's statement is not credible. The fact that the statement is so radically inconsistent with the record that it suggests the Claimant may have intentionally tried to mislead the Administration.
>
> The Claimant's allegations regarding his pain are also inconsistent with the objective records. The records reflect the Claimant's pain has decreased significantly in 2011 and it was not overly severe even before his operation on the left shoulder. Notably, by June 2011 the Claimant's pain was only a one on a ten point pain scale. The Claimant's pain has only minimally affected the Claimant's abilities to perform his daily activities (Ex. B18F). Moreover, the Claimant has typically only been prescribed Tramadol, which is a non-narcotic, which further suggests the Claimant's pain is not severe as he has alleged. The undersigned has also considered the claimant's statements regarding medication side effects, such as sleepiness. The treatment records do not describe chronic severe problems with medication side effects, but the undersigned has reduced his functional capacity in part to account for some occasional side effects (e.g., he cannot work around unprotected heights.) This conclusion is consistent with the claimant's own report that he still drives and performs ordinary household chores, such as cooking (Exhibit 18F).

(R. 26-27). The Commissioner contends that the ALJ reasonably concluded that plaintiff's inconsistent statements about when his shoulder impairment began undermine his credibility and that the plaintiff's testimony of pain is inconsistent with the objective evidence. (Commissioner's brief, Doc. # 15, pp. 7-9).

Upon consideration of the ALJ's credibility finding and the record as a whole, the court concludes that the ALJ's adverse credibility finding rests primarily on reasons that are not supported by evidence of record.[2] The ALJ's analysis reflects that his credibility

---

[2] Both parties have filed appendices summarizing plaintiff's medical treatment record. The Commissioner's summary (Doc. # 15-1) omits some of plaintiff's treatment of record during the relevant period and, as to some of the identified instances of treatment, the Commissioner's description is inadequate. Plaintiff's summary of the medical evidence (Doc. # 17), with the exception of its first entry, describes medical treatment that is not evidenced in the administrative transcript before the court, even though *some* of the treatment plaintiff includes in the summary

7

determination was influenced strongly by his conclusion that plaintiff was not truthful with the consultative examiner about when his shoulder pain began. The ALJ found that "[t]he Claimant's inconsistent statements about when the Claimant's shoulder impairment began undermine his credibility" to such an extent that the ALJ believed that plaintiff "may have intentionally tried to mislead the Administration." (R. 26). The ALJ observed that plaintiff's statement to the consultative examiner that "he began having shoulder pain in 2006" was "radically inconsistent with the record," as demonstrated by the following: (1) "he did not raise that issue in his past disability case, which related to 2006 to 2009[;]" (2) he "did not allege any problem when he submitted his initial application in this matter[;]" and (3) "he told his physician that the pain only began in April 2010." (R. 26). However, not one of the three inconsistencies identified by the ALJ is supported by the record.

The court's record does not include the initial disability report plaintiff completed on May 31, 2007 (see R. 223) in support of his previous claim. However, in an undated "Disability Report - Appeal," claimant complained of "pain in joints & muscles of upper body." (Exhibit B5E, R. 226).[3] In another "Disability Report - Appeal" completed on

---

relates to the period before the ALJ's decision. Although plaintiff proceeds *pro se*, the court need not attempt to ascertain the reason that these medical records are not included in the administrative transcript – *i.e.*, whether the omission is due to the plaintiff's failure to submit them to the Commissioner during the administrative proceedings or to a processing error on the Commissioner's part – because the Commissioner's decision is due to be reversed on the record as certified by the Commissioner.

    [3] While the court found no indication within the exhibit itself of when it was completed, the Commissioner's "Court Transcript Index" provides a date of "08/20/2007" for this exhibit.

January 11, 2009, plaintiff complained of constant moderate pain that increased at night and during daily activities, including "[j]oint pain from shoulder to finger tip[,]" since approximately July 18, 2006  (R. 229); he added, on a continuation page, "Shoulders: Ache, pain + stiffness. Pain increase when I over exert myself" (R. 235).  Plaintiff indicated that numbness in his limbs increased "if sleeping on shoulder." (Id.).  He reported visiting Dr. Danny Hood in 2006 for "shoulder pain + wrist pain." (R. 230).  ALJ Amendola's decision on the previous claim reflects that, at the hearing, plaintiff testified that he has "problems in his shoulders and arms." (R. 93).  Judge Amendola's discussion of the evidence includes plaintiff's examination by Dr. Danny Hood on January 10, 2006 "for complaints of shoulder and wrist pain[,]" Dr. Hood's diagnosis at that time of "mild bursitis of the shoulder[,]" plaintiff's complaints to his orthopedic specialist on January 7, 2008 of "paresthesias and tingling of both hands and aching of the shoulders, elbows, and wrists[,]" and the nerve conduction velocity and electromyogram performed by Dr. Wouters on March 13, 2009 for plaintiff's "complaints of pain and numbness in the shoulders and hands." (Id.; R. 94).  The evidence to which Judge Amendola refers was before the ALJ in the present case, as well. (See Dr. Hood's treatment note for 01/10/2006, R. 285 ("Mr. Lewis comes in complaining of left shoulder pain. The patient had been working at Hwashin.  He had some shoulder pain from pulling racks around. The pain made it difficult to use his left arm."); Dr. Davis's treatment note for 01/07/2008, R. 339 ("He comes in today complaining of paresthesias and tingling in both of his hands. He also has some achiness in his shoulders, elbows, and

9

wrists[.]"); Dr. Wouters's 3/13/2009 electrodiagnostic report, R. 348 ("PATIENT ... COMPLAINS OF PAIN IN BOTH OF HIS SHOULDERS AS WELL AS NUMBNESS IN BOTH OF HIS HANDS.")(capitalization in original)).  Thus, the record provides no support for the ALJ's conclusion that plaintiff did not raise the issue of "shoulder pain" in his previous application for benefits.

The next inconsistency identified by the ALJ is that plaintiff "did not allege any problem when he submitted his initial application in this matter[.]" (R. 26).  This, too, is unsupported by the record.  In the disability report plaintiff completed in connection with the present claim, plaintiff identifies his impairment as "[c]arpal tunnel syndrome[.]" (R. 241).  Plaintiff's response to the next question – "How do your illnesses, injuries, or conditions limit your ability to work?" – is, "I am in pain.  I am limited to what I can lift.  The pain is in my fingers, wrist, elbows *and shoulders* in both sides.  I have stiffness and numbness.  My fingertips go cold."  (Id.)(emphasis added).  Thus, the record demonstrates that – contrary to the ALJ's conclusion – plaintiff did allege shoulder pain in his initial application in this matter.

The third and final inconsistency cited by the ALJ to support the suggestion that plaintiff "may have intentionally tried to mislead the Administration" is plaintiff's statement to "his physician that the pain only began in April 2010."  (R. 26).  The ALJ cites "Ex. B13F" for this statement (see R. 26, first full sentence).  He does not provide a more precise citation, and the court has located no such statement within the exhibit.  (See R. 390-442).

10

Much of Exhibit B13F relates to plaintiff's treatment *before* April 2010. (See R. 411-442). Upon review of the remainder of the exhibit, the court concludes that the ALJ must here intend to rely on the nursing note completed by Freddie McGough, R.N., during plaintiff's April 22, 2010, treatment for bilateral shoulder pain at the emergency department of L.V. Stabler Memorial Hospital. (R. 406). Within that note, Nurse McGough states:

> Patient rates pain as 5 on a one-to-ten scale with ten as the worst pain ever. Pain in located in the right shoulder, left shoulder. *Onset of pain was more than a week ago*. Patient describes the pain as aching.

(Id.)(emphasis added). However, the emphasized sentence – viewed in the context of the entirety of the treatment record for that ER visit (R. 401-10) – cannot reasonably be understood to mean that plaintiff stated that his shoulder pain first began (or "only began") in April 2010. Within the same note, McGough writes, "Describes symptoms as *chronic to the bilateral shoulder*. (Id.)(emphasis added). The triage nurse also recorded plaintiff's complaint as one of "CHRONIC BILAT. SHOULDER PAIN." (R.404)(capitalization in original). The clinical impression of the ER physician, Dr. Preyear, was "chronic shoulder pain." (R. 403, 409). The rest of Exhibit B13F consists of Dr. Shekar's orders for imaging studies and the results of those studies; it includes no record of any statement by the plaintiff. (See R. 390-400).[4]

---

[4] Although the ALJ did not cite Dr. Shekar's or Dr. Chavan's treatment notes as evidence of plaintiff's statement that his shoulder pain "only began in April 2010," the court nevertheless searched those records – unsuccessfully – for evidence of such a statement to either physician. (See Exhibits B14F, B15F, B16F, B17F, and B19F). The treatment note for plaintiff's May 4, 2010, visit to Dr. Shekar records plaintiff's complaint as, "c/o (bil) shoulder pain picking up work materials '07'[.]" (R. 447). Dr. Chavan's treatment note for plaintiff's first visit to him on January 20, 2011,

The ALJ further reasons that the objective evidence is inconsistent with the plaintiff's allegations regarding his pain. He notes that "[t]he records reflect the Claimant's pain has decreased significantly in 2011 and it was not overly severe even before his operation on the left shoulder." (R. 27). While some of the specific evidence the ALJ describes does appear in the record, the ALJ omits any discussion of other evidence of record that tends to support plaintiff's pain testimony. For instance, he relies on the fact that plaintiff "has typically only been prescribed Tramadol, which is a non-narcotic, which further suggests the claimant's pain is not severe as he has alleged." (R. 27). However, plaintiff's medical record includes numerous notations that plaintiff is allergic to hydrocodone. (See *e.g*, R. 410, 447, 449, 451, 453, 456, 457, 459, 461, 463, 465, 468, 472, 488, 509). One treatment record reflects a nurse practitioner's decision to "try Ultram [tramadol] for pain" arising from plaintiff's second degree burn wounds – despite plaintiff's report of pain at a level sufficient to keep him from sleeping for the previous few nights – because plaintiff could not tolerate hydrocodone. (R. 431-32). The ALJ may have considered this evidence and found that it did not impeach his conclusion that the reason that plaintiff was prescribed Tramadol routinely was because his pain was not severe; however, the decision reflects no such analysis of the evidence. Additionally, plaintiff's treating physician did not rely only on prescriptions for Tramadol to provide plaintiff with relief from his pain. In most of plaintiff's monthly office visits

---

records his chief complaint as "pain in the left shoulder" and states, in the "history" section, "Gives a history of pain which has been bothering him since 2006." (R. 472). Within the "treatment plan," Dr. Chavan notes, "After discussing various treatment options the patient states the problem has been bothering him since 2006." (Id.).

during the period before his shoulder surgery, Dr. Shekar also sought to control plaintiff's pain by administering injections. (Exhibit B14F, R. 444-68). While the ALJ observes elsewhere in his decision that plaintiff "has also had multiple epidurals" (R.26), he concludes that these "have been effective in reducing the Claimant's pain." Id. (citing "Ex. B16F"). However, the evidence cited by the ALJ (Exhibit B16F, R. 478-97) does not support the latter conclusion. This exhibit includes records from plaintiff's orthopedic surgeon, Dr. Chavan.  In his note for plaintiff's initial evaluation, Dr. Chavan includes plaintiff's report of "4 prior shoulder injections," that "[h]e has had no relief from the injections" and – after Dr. Chavan discussed treatment options with the plaintiff – that "[h]e has tried rest, injections without any significant relief in his left shoulder joint and would like to consider further treatment in the form of surgery" (R. 481).[5]  The ALJ further observes that plaintiff "stated his pain in his shoulder was only 5/10 in June 2010" (R. 26, citing Exhibit B14F),[6] but does not mention plaintiff's pre-surgery report to Dr. Chavan that his pain is variable, at a level "5/10 in severity" that "increases to 8/10 in severity."  (R. 481).

The court acknowledges that the ALJ is not required to mention every bit of evidence in the record[7] and, further, that the record supports the ALJ's observation that plaintiff's

---

[5]  Plaintiff had reported short-term pain relief from left shoulder injections to Dr. Shekar.  (See Exhibit B14F at R. 463).

[6]  This pain report occurred in May 2010, not in June.  (See R. 449-54).

[7]  See Dyer, 395 F.3d at 1211 (ALJ need not "specifically refer to every piece of evidence in his decision," so long as the decision is sufficient to enable the court to conclude that the ALJ considered the claimant's condition as a whole).

shoulder pain decreased significantly in the months following his surgery. However, in addition to concluding (without mentioning the evidence of record that suggests otherwise) that plaintiff's pain was not "overly severe" before the surgery, the ALJ determined that plaintiff's shoulder pain did not even *begin* until April 2010. As noted above, the latter finding arises from the ALJ's unsupported reasoning in his credibility determination that plaintiff had so informed his physician, and, also, that plaintiff "did not allege shoulder pain in the prior case or when he first filed this case[.]" (R. 26). This conclusion – particularly in view of the ALJ's belief as to plaintiff's mendacity – precluded meaningful analysis of plaintiff's claim including, among other things, whether plaintiff might be entitled to a second closed period of disability based on his condition before his shoulder surgery.

## CONCLUSION

Upon review of the ALJ's decision and the record as a whole, the court concludes that the ALJ's credibility determination is not supported by substantial evidence. Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the Commissioner's decision be reversed and that this action be REMANDED to the Commissioner for further proceedings.[8]

The Clerk of the Court is ORDERED to file the Recommendation of the Magistrate Judge and to serve a copy on the parties to this action. The parties are DIRECTED to file any

---

[8] The court expresses no opinion regarding whether plaintiff is entitled to the benefits he seeks. The undersigned Magistrate Judge recommends reversal and remand for further proceedings because the ALJ erred in analyzing the credibility of plaintiff's statements regarding his symptoms; any such further proceedings may – or may not – result in an award of benefits.

objections to this Recommendation on or before July 22, 2014.  Any objections filed must identify specifically the findings in the Magistrate Judge's Recommendation to which the party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  Resolution Trust Co. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989).

DONE, this 8th day of July, 2014.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE